UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Brian Decoito

    v.                                  Civil No. 14-cv-157-LM

New Hampshire Attorney General,
and Esker Tatum, Warden, Federal
Correctional Institution, Berlin,
New Hampshire

## REPORT AND RECOMMENDATION

Before the court is respondent New Hampshire Attorney General's motion for summary judgment (doc. no. 23) on each claim asserted in Brian Decoito's petition for relief under 28 U.S.C. § 2254.  Decoito has objected (doc. no. 28).

## Procedural History

The § 2254 petition challenges Decoito's state convictions for falsification of evidence, conspiracy to commit robbery, and assault.  Decoito was sentenced on those offenses to a prison term to be served consecutively to the unrelated federal sentence he is presently serving.

Decoito's state charges concerned his involvement in an assault on Michael Tremblay, which occurred while Decoito and Tremblay were both inmates at the Strafford County House of Corrections ("SCHC").  Ronald Wilson, a federal inmate who was Decoito's cellmate in the SCHC after that assault, testified in Decoito's state prosecution regarding incriminating statements

Decoito made to Wilson after Decoito had been charged. Decoito moved in the Strafford County Superior Court ("SCSC") to exclude Wilson's testimony, asserting that Wilson was a state agent, and that the state, by corresponding with Wilson and calling him to testify to Decoito's statements, had violated Decoito's rights to counsel and due process. The SCSC denied that motion. The New Hampshire Supreme Court ("NHSC") affirmed Decoito's convictions, specifically ruling against Decoito on the constitutional claims regarding violations of his right to counsel and due process rights, relating to the use of Wilson's testimony to incriminate Decoito. See Doc. No. 23-3 (State v. Decoito, No. 2012-0759 (N.H. Oct. 25, 2013)) ("Decoito I").

Decoito moved for a new trial in the SCSC, asserting a Sixth Amendment claim of ineffective assistance of counsel, relating to his trial counsel's failure to renew Decoito's objection to Wilson's testimony at trial. The SCSC denied that motion on April 10, 2014. See Doc. No. 23-5 (State v. Decoito, No. 219-2011-CR-398 (N.H. Super. Ct., Strafford Cnty. Apr. 10, 2014)) ("Decoito II"). The NHSC declined to review that order. See Doc. No. 23-6 (State v. Decoito, No. 2014-0506 (N.H. Sept. 29, 2014)).

Decoito's § 2254 petition asserts the following claims:

1. The admission of Wilson's testimony violated Decoito's Sixth Amendment right to counsel, and Fourteenth Amendment

right to due process, because Wilson was acting as an agent of the state when he acquired, and then testified to, incriminating information from Decoito.

2.  The prosecutor violated Decoito's Sixth Amendment right to counsel and Fourteenth Amendment right to due process, by contacting Wilson and recruiting him to act as a state agent.

3.  Decoito's conviction was obtained in violation of his Sixth Amendment right to the effective assistance of counsel, in that Decoito's trial counsel did not object to Wilson's testimony when his trial testimony differed from the statements he made during a voir dire outside of the jury's presence.

## Discussion

### I.  Habeas Standard of Review

In a federal habeas action, relief is not available as to any claim adjudicated on the merits in state court, unless the state court's legal conclusions or application of law to settled facts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); see also Robidoux v. O'Brien, 643 F.3d 334, 338 (1st Cir. 2011).  A state court decision is "contrary to" established federal law, either if it applies substantive law that differs from, and conflicts with, the standard prescribed by the United States Supreme Court, or if it issues a different ruling than that Court did, based on materially identical facts.

See Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" of federal law is not the same as an incorrect application.  See id. at 411.  The petitioner must show "'that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  Scoggins v. Hall, 765 F.3d 53, 57 (1st Cir. 2014) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)), cert. denied, 135 S. Ct. 1007 (2015).

If the issue is one of fact, the habeas court must "apply a presumption of correctness to the [state] court's factual findings and also examine whether there has been an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  John v. Russo, 561 F.3d 88, 92 (1st Cir. 2009); see also 28 U.S.C. § 2254(d)(2).  The petitioner bears the burden of rebutting the presumption of correctness of state court factual findings by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).

**II.  Jailhouse Informant (Claims 1 and 2)**

    A.  Background

Claims 1 and 2 are substantially similar claims asserting violations of Decoito's Sixth and Fourteenth Amendment rights to counsel and due process, relating to the prosecutor's contacts

4

with Wilson, Wilson's conversations with Decoito, and the admission of Wilson's incriminating testimony at Decoito's trial.  Decoito argues that Wilson was acting as a state agent when Wilson spoke with Decoito in their cell after the prosecutor had spoken with Wilson on the phone in June 2012, and that the state violated due process and Decoito's right to counsel by using Wilson's testimony regarding those conversations to incriminate Decoito at his jury trial.  The NHSC adjudicated Decoito's federal claims on the merits in Decoito's direct appeal and affirmed his conviction.  See Decoito I, slip op. at 3 (finding no violation of Decoito's state or federal constitutional right to counsel because the trial court reasonably concluded in light of the record before it that Wilson and government had not agreed to make Wilson a government agent, and because Wilson had not interrogated Decoito).

   The following facts derived from the state court record provide a context for this court's consideration of Claims 1 and 2.  Wilson, Decoito's SCHC cellmate, sent an unsolicited letter to Decoito's prosecutor, dated May 29, 2012, advising her that Decoito had made inculpatory statements about the assault on Tremblay.  In that letter, Wilson offered to wear an electronic recording device or "wire" to record Decoito's statements.

Decoito did not specifically request anything in return for doing so, but he did indicate that he had a concern for his safety. Decoito has conceded, in the state courts and here, that at the time Wilson wrote the first letter, Wilson was not a government agent. See Doc. No. 6, at 12.

   The prosecutor responded to that letter by calling Wilson on the telephone. The prosecutor described that phone call in an email that she sent to Decoito's defense counsel, Attorney Robert Watkins, in the month before trial, which Watkins read into the record in support of his motion to exclude Wilson's testimony. According to that email, the prosecutor told Wilson on the phone that she had reached out to the local police and to the federal probation office, as both agencies were involved in prosecutions against Wilson, to let them know about Wilson's offer to obtain inculpatory statements from Decoito. The prosecutor further stated in the email that she told Wilson she had no control over what would happen in those agencies' cases against Wilson. Wilson's answer was that he understood that they were outside of her jurisdiction. See State v. Decoito, No. 219-2011-CR-00398 (N.H. Super. Ct., Strafford Cnty.), Trial Tr., vol. 4 ("Trial Tr."), 630 (July 19, 2012). The prosecutor then asked Wilson about his statement in the May 29 letter that he would cooperate with Decoito's prosecutor under certain

circumstances. Wilson explained that he was willing to cooperate if his concern for his safety could be addressed. Id. at 631. The prosecutor asked if moving him to a different facility would "make him feel better," and Wilson said it would. Id. at 631. The prosecutor then told Wilson that although she was leaving on vacation, she would "'continue to make phone calls and would look into whether or not [the state] could arrange to have [Wilson] moved after he wore a wire.'" Id. (quoting email to defense counsel from prosecutor). The prosecutor did not at that time make an affirmative statement to Wilson indicating that he was not a government agent. See Decoito I, slip op. at 3.

After that phone call, Wilson followed up with a second letter to the prosecutor, dated June 18, 2012, stating that, since their phone conversation, Decoito had continued to speak freely and had told Wilson "'step by step how the incident went down.'" Decoito I, slip op. at 3 (quoting June 18 letter). Wilson's second letter stated that Decoito had "'offered all this without [Wilson] asking,'" and that Decoito "'brags about it all on a daily basis.'" Id. After Wilson mailed the June 18 letter, Wilson's defense attorney advised Wilson to stop communicating with the state. Id., slip op. at 1.

The state subpoenaed Wilson to testify at Decoito's trial. Before Wilson testified, Decoito's counsel moved to exclude Wilson's testimony based on a claim of a violation of Decoito's right to counsel, to the extent that the testimony concerned statements made by Decoito in June 2012. Before ruling on that motion, the trial court heard arguments and allowed counsel to conduct a voir dire of Wilson, outside of the jury's presence, regarding whether he had been a government agent.

On voir dire, Wilson testified that, after speaking on the phone with the prosecutor, Wilson felt there was an "understanding" that he could wear a wire, and that there would continue to be "cooperation between [him] and [the] State." Trial Tr., 641 (July 19, 2012). Wilson also testified, however, that he understood the prosecutor's statements in the phone call as indicating only that she planned to find out what would happen if Wilson wore a wire; he did not understand that there was an agreement at that point that Wilson would wear a wire or that Wilson would gather information from Decoito by having conversations with him. See id. at 644, 646. Wilson testified that Decoito's prosecutor told him she could not get involved in the cases that were pending against him because they were not within her jurisdiction, see id. at 642, and he testified that

the prosecutor did nothing to induce him to question or deal with Decoito, id. at 647.

Following the voir dire, the trial court ruled from the bench that there had not been an agency relationship, and that the state had not made promises to induce Wilson to interrogate Decoito. See id. at 647. The court denied Decoito's motion and allowed Wilson to testify. See id.

B.   NHSC Findings

The NHSC affirmed Decoito's conviction, citing two bases for its decision on claims that were analogous to Claims 1 and 2, which were before that court:  the insufficient evidence that there had been an agency agreement between Wilson and the state, and the lack of evidence that Wilson had interrogated Decoito. See Decoito I, slip op. at 3. The NHSC stated that it was Decoito's burden to "show that the State took affirmative action to establish an agreement." Id. The court specifically found that the state had neither initiated contact with Wilson, nor directed Wilson's actions in any way, and that the "totality of the circumstances" did "not compel a finding that an agreement existed between the State and Wilson." Id.

The record that was before the trial court when it denied Decoito's motion to exclude Wilson's testimony included evidence that neither Wilson nor the state believed that they had entered

9

into an agency relationship with respect to Wilson's role in obtaining statements from Decoito.  Additionally, the NHSC found no evidence that Decoito had been interrogated.  The NHSC characterized as uncontradicted Wilson's testimony in the voir dire and/or his statements in the May 29 and June 18 letters that he had never questioned Decoito about the charges, that Wilson had not solicited statements from Decoito, and that Decoito had spoken freely about, and had bragged about his involvement in, the incident.  The NHSC findings are based on a reasonable construction of the record.  Decoito has thus failed to show by clear and convincing evidence that the factual findings underlying the NHSC's rulings regarding agency and interrogation were unreasonable based on the state court record.

    C.    <u>NHSC's Conclusions of Law</u>

Decoito challenges the NHSC decision on his Sixth and Fourteenth Amendment claims, arguing that the state court ruling is both contrary to, and an unreasonable application of Supreme Court precedent relating to jailhouse informants obtaining information after a cellmate's right to counsel has attached.

> The Sixth Amendment guarantees the accused, . . . after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. . . . [T]his guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right.

Maine v. Moulton, 474 U.S. 159, 176 (1985) (citations omitted).

The "Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." Id. To establish the existence of a constitutional violation, the criminal defendant must show that the state "knowingly circumvent[ed] the accused's right to have counsel present in a confrontation between the accused and a state agent," id., by taking "some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). Such circumstances may be found where the government prearranges with one cellmate to be an informant and conceals that fact from the other cellmate, then allows the informant to participate actively in a conversation regarding the charges at issue, see United States v. Henry, 447 U.S. 264, 271, 272 & n.10, 273 (1980), in a manner that may be deemed the "'functional equivalent of interrogation.'" Moulton, 474 U.S. at 177 n.13 (quoting Henry, 447 U.S. at 277 (Powell, J., concurring)). See generally Kuhlmann, 477 U.S. at 459 ("defendant does not make out a violation of that [Sixth Amendment] right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police").

11

In ruling against Decoito in his direct appeal on the claims analogous to Claims 1 and 2, the NHSC relied on state court cases, as well as a federal case from the Eleventh Circuit, which in turn cite a similar set of Supreme Court Sixth Amendment cases. See Decoito I, slip op. at 2 (citing, inter alia, State v. Gosselin, 131 N.H. 243, 248, 552 A.2d 974, 976-77 (1988), and Lightbourne v. Dugger, 829 F.2d 1012, 1020 (11th Cir. 1987)). Decoito has not shown that the NHSC's conclusions of law unreasonably applied any federal constitutional standard to the facts in Decoito's case, or that the NHSC decision in Decoito I is contrary to any United States Supreme Court decision arising out of materially indistinguishable facts. While Decoito argues that his case is essentially the same as United States v. Henry, 447 U.S. 264 (1980), in Henry, the government had specifically charged the jailhouse informant with the task of obtaining information from the accused, and that informant was acting, by prearrangement, as a government agent. See id. at 266, 268, 272 & n.10, 273. Decoito in this case has failed to rebut by clear and convincing evidence the presumption that the state court correctly decided that no similar prearrangements between Wilson and the state had been made. Accordingly, Decoito has not shown that the NHSC decision is

either contrary to, or an unreasonable application of federal law established by the United States Supreme Court.

For the foregoing reasons, the district judge should grant the state's motion for summary judgment on Claims 1 and 2.  The § 2254 petition should be denied to the extent it seeks relief on those claims.

### III. Ineffective Assistance of Counsel (Claim 3)

In Claim 3, Decoito asserts a Sixth Amendment ineffective assistance of counsel claim relating to Decoito's trial counsel's failure to object to Wilson's testimony at trial, after Wilson testified to facts before the jury that differed from his voir dire testimony regarding his reasons for offering to wear a wire.  The April 10, 2014, SCSC order denying Decoito's motion for a new trial, Decoito II, is the last reasoned state court decision on the merits of Claim 3.  In that order, the Superior Court cited the state constitutional standard for evaluating ineffective assistance of counsel claims, which is the same as the standard prescribed in Strickland v. Washington, 466 U.S. 668, 687-88 (1984) (to establish ineffective assistance of counsel claim, petitioner must show both that counsel's representation fell below an objective standard of reasonableness, and that prejudice

13

resulted).  See Decoito II, slip op. at 2 (doc. no. 23-5, at 8) (quoting State v. Brown, 160 N.H. 408, 412-13 (2010)).

Decoito argues here, as he did in his motion for a new trial, that Wilson's testimony before the jury differed from that which was elicited on voir dire.  In particular, Decoito argues, the discrepancies included Wilson's testimony at trial, but not on voir dire, that he sent the May 29 letter to the prosecutor to find out what benefit he might gain, see Trial Tr. at 692, 695, and that, after speaking with the prosecutor, Wilson was enthusiastic and excited that "this" might work out, see id. at 696, that he was hopeful that by participating he might get credit, id. at 699, and that he anticipated his next meeting with the prosecutor may be to attach a wire, see id. at 698-99.  Decoito argues that such differences between the voir dire and trial testimony give rise to an inference that Wilson lied when on voir dire he stated that no agreement existed between him and the prosecutor.  Decoito further contends that the trial court may have reconsidered its earlier denial of the motion to exclude Wilson's testimony, and that the NHSC in Decoito's direct appeal would have reviewed the trial court's ruling in light of all of those statements.  See Doc. No. 6 at 20-22.

14

The SCSC, in denying the motion for a new trial, applied the two-pronged standard for evaluating ineffective assistance of counsel claims to the record before it. The SCSC disagreed with Decoito's contention that the cited trial transcript statements showed that there was more to the relationship between the government and Wilson than the trial court or NHSC had found. See Decoito II, slip op. at 3 (doc. no. 23-5, at 9). The SCSC further noted that the cited statements were evidence of Wilson's hopes and motives, and did not establish that there had been any "exchange evincing an understanding that the witness will be acting on the State's behalf or for its benefit." See id. Further, in ruling on the motion for a new trial, the SCSC concluded that Decoito had not shown that Wilson had interrogated Decoito. For those reasons, the SCSC in Decoito II concluded that it would not have made a difference in the result in Decoito's case if Decoito's trial counsel had objected again to the admission of Wilson's testimony after Wilson testified before the jury.

The pertinent factual findings in Decoito II are reasonable in light of the record before that court, and are deemed correct here. See 28 U.S.C. § 2254(d). Those findings provide a reasonable basis for the SCSC's conclusion that a new objection would not have made a difference in Decoito's case, and for its

15

ruling against Decoito on the claim of a violation of the right to the effective assistance of counsel at trial. Decoito has thus failed to show that the SCSC's order is inconsistent with, or contrary to, Strickland or any other pertinent Sixth Amendment precedent. Accordingly, the district judge should both grant the state's motion for summary judgment, and deny the § 2254 petition, as to Claim 3.

## IV. Certificate of Appealability

The Rules Governing Section 2254 Proceedings ("§ 2254 Rules") require the court to "issue or deny a certificate of appealability when it enters a final order adverse to the party." § 2254 Rule 11(a). The court will issue the certificate "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because Decoito has failed to make a substantial showing of the denial of the constitutional right, the district judge should decline to issue a certificate of appealability.

## Conclusion

For the foregoing reasons, the district judge should grant respondent's motion for summary judgment (doc. no. 23), deny the petition for a writ of habeas corpus (doc. no. 1), and decline to issue a certificate of appealability. Any objections to this Report and Recommendation must be filed within fourteen days of

receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).

                                                 _____
                                                 Andrea K. Johnstone
                                                 United States Magistrate Judge

June 24, 2015

cc:   Brian Decoito, pro se
       Elizabeth C. Woodcock, Esq.